This is a State Appeal from the Order Suppressing Evidence against the Defendant who was charged with DUI and driving while license revoked, charged with felonies. The Defendant had an encounter with a police officer in a parking lot. The primary issue appeal is whether that encounter began as a consensual encounter and then ripened into a seizure when the Defendant, or after the Defendant, got out of his truck and revealed himself to be intoxicated and driving without a valid license. Or whether a seizure occurred at the outset when the officer turned on his squad car's spotlight in the parking lot where the Defendant had parked. You do take the position, don't you, that the officer had enough information to make a seizure without it ripening into something after a consensual encounter. Don't you take that position? Absolutely. Because there was a 911 call and so forth. You're not abandoning that. Right, of course not. Because of the 911 call and the two IBC violations that the officer saw as he tailed the Defendant through town. But the position is, yes, that while the Defendant revealed himself to be intoxicated, after he got out of his truck and staggered and held onto the door and told the officer that he didn't have a license, that a seizure had not occurred until that point. Was that testimony in the suppression hearing? That he got out and held onto the door? Yes, Your Honor. Okay. So, again, if there was a seizure at the outset, the people do present reasons why any seizure was made with reasonable suspicion or probable cause. The facts, the Florida Police Department received a 911 call about a truck heading toward town. It was just past midnight on a Saturday night. Two officers drove their squad cars out to Route 50, which was on the edge of town, to meet the vehicle. Officer Cook was behind the truck as it drove through downtown and saw those vehicle code violations I mentioned. He was about to turn on his overhead lights when the truck pulled into a parking lot and stopped. Cook then pulled in behind the vehicle and turned on his squad car's spotlight. The other officer, who was some distance behind Cook in a separate squad car, pulled in behind Cook. Cook immediately got out of his truck once Cook had turned on his spotlight and then staggered and held onto the door for support. Cook asked the defendant for identification. The defendant responded that he didn't have a driver's license because it had been revoked. Cook saw a can of Bud Light in the center console of the truck, noticed the usual indicia of intoxication, administered field sobriety tests. The defendant failed them and was arrested. Maybe I'm wrong about this, but in the suppression hearing, wasn't there an objection by defense counsel to testimony about what happened after the stop took place? And wasn't that sustained? Maybe I'm wrong about that. Or is it possible that this testimony you're talking about him staggering and seeing the beer candle that was in the preliminary hearing? You know, Your Honor, that might be possible. I may be confused about it, but anyway. No, that might be possible, as I stand here. But even if that's so, of course, in reviewing an order from suppression hearing, the court can look at anything in the record on appeal. And that evidence is also in the record on appeal. Evidence from the preliminary hearing? Yes. People cite cases in the open brief on that. So a seizure of a person on the street or in a parked vehicle occurs when a reasonable person believes that he would not be free to decline the officer's request or to terminate the encounter, would not feel free to leave. The Supreme Court held in Ludeman that an officer can approach a person, even in a parked vehicle, and ask questions of that person. And it's only if the officer, through a physical force or a show of authority, restrains that person's liberty that a seizure will be deemed to occur. And the Supreme Court held in Ludeman that the officer's use of a spotlight does not turn a consensual encounter into a seizure, that a seizure, even in those circumstances, requires coercive behavior. The Supreme Court held that it's not going to require an officer to choose between conducting a consensual encounter in the dark, again, this was after midnight, and effecting a seizure. And here there was no evidence of coercive behavior, such as that the officer or officers ordered the defendant to put his hands on the wheel or drew their weapons or used a tone of voice suggesting that compliance was required, ordered the defendant out of the truck. Again, the testimony was that the defendant got out of his truck when Cook turned on his light. There's no evidence that the officers flanked his truck on either side. And notably in Cosby, the court held that even that behavior does not indicate a seizure. And there's no evidence that the police vehicles boxed in the defendant's truck so that he couldn't get away. So based on that evidence and the cases cited in the People's Briefs, no seizure occurred at the outset of this encounter. It was only when the defendant, and then of course the defendant reveals himself to be intoxicated and a DUI arrest. So two separate police cars pull into a parking lot behind the defendant's truck, and they shine a spotlight on his truck. And your argument is that a reasonable person would believe that he's free to leave. He just start the truck back up and drive off. Well, one point, Your Honor, it was just the one vehicle that showed the spotlight. Well, I know, but both police cars pulled in, two separate police cars, right? Right. And by the time he gets out, there's a second one arriving. That, I'm glad you asked that. I was just about to make that point. That's not clear from the record. It's not clear whether Officer Irwin was directly behind Officer Cook as they proceeded down Main Street. And it's not clear whether Officer Cook had turned on the spotlight and the defendant had gotten out of his truck before that second police car had turned into the lot. So the record doesn't say. Is there any indication that the court had any credibility issues with respect to the testimony of the violations, I guess the weaving within the lane and the turning into a parking lane? I don't believe so. That's certainly something that the parties on appeal are arguing about. But it's the State's position. Well, the court ruled that Cook, with respect to the weaving within a lane, the court ruled that Cook, quote, said it was weaving, didn't cross the line, didn't, you know, as far as I can tell, there was no motor vehicle violation. I think that the natural reading of that is that the court accepted Cook's testimony that the vehicle was weaving within a lane, but ruled that But that wasn't a violation is what the court is saying, essentially. Right. Wiggling is what he's saying. Right. And of course, whether it was an IBC violation is a separate issue from the question of whether there was reasonable suspicion to stop the vehicle based on weaving within a lane. And, of course, the unbroken line of precedent says that there is a reasonable suspicion to stop a vehicle when it's weaving within a lane, even if that is in itself an IBC violation. With respect to the second set of IBC violations, the wide left turn, the court didn't find that, I don't read the court's ruling as making a credibility determination so much as insisting on a second source for the information that the truck made a wide left turn. The court could find this positive, the fact that it wasn't on video. The defendant in the answer brief concedes that he made a wide left turn, but argues that it was momentary. And, of course, even this constitutes an IBC violation sufficient to justify a traffic stop. Does that answer your question? Yes. I mean, the court did talk about the lack of the video. Yes, it did. To see what really happened. Yeah. Right? Doesn't that suggest a credibility issue? Well, Your Honor, if it does, then certainly if there was a credibility finding based on that, and I can see what you mean, then people's position, this is argued in the brief, is that that credibility finding was against the manifest weight of the evidence because there's no legal justification for finding that just because something isn't on video. Go ahead. Please. Just because something isn't on video means that it's, I mean, traffic stops are held with no video all the time. Thank you. Thank you. Counsel? Good morning, Your Honors. May it please the Court. Counsel? Well, there's a lot to unpack here. First of all, I would suggest that the State's argument here that there were two IBC violations that justified the traffic stop, even if it was a traffic stop, begs the question. First of all, weaving with land is not an IBC violation. It only rises to the level of reasonable suspicion if it rises to the level of erratic driving. In this case, the testimony was very ambiguous. The officer, Cook, simply said, first he said it weaved as in singular, then it said it was weaving,  There was no testimony that it was swerving, no testimony that it was having trouble controlling his vehicle. And with respect to the wide left turn opposing counsel cites the Hackett case, well, first of all, the Hackett case concerned a violation of 11709A, which is going outside the lane in just a straight line. This has to do with turning. Which is 80182, so it's not even the same statute. But more than that, when someone turns into a parking lane that's empty, that person is presumptively intending to park. There was no testimony from Officer Cook that he swerved or any other indicia of impaired judgment. So it was reasonable for the court below to draw the conclusion that he intended to park, decided to park at the VFW parking lot, went back in the road, and according to testimony of Officer Cook, this happened in very quick succession. You're arguing that this is an inference that the court might have made. Exactly, and given that we owe deference to the finder of fact, any ambiguities or inferences should be viewed in the light most favorable to Mr. Greenwood in this case. Well, it's a totality of the circumstances test, though, isn't it? Exactly. What about the 911 call? I mean, these officers were alerted. There was a 911 call. I understand, Your Honor, but the 911 call concerned observed conduct. The number one, there were some credibility problems with that insofar as how could this person who was presumptively traveling down the highway, you know, see the car pass the truck, then see the guy undo his fly and do public urination, and then see it again a second time, pass the truck, all while this person was probably driving at 55 miles an hour. What if it was the truck driver who made the call? Well, that's a possibility. But even so, how if the truck passed him, Mr. Greenwood's truck passed the truck driver, the semi-driver, how would the semi-driver see all this other conduct? You know, the semi-driver was presumably traveling at 55 miles an hour. But more importantly, it's not a dish of reckless or erratic driving. Despite the State's strained efforts to try to shoehorn him into that category, speeding is not erratic driving, and the Navarat case told us that. The recent U.S. Supreme Court case said that that by itself is not strong enough indicia of drunk driving to consider that there may be an ongoing crime here. And certainly public urination, whatever one thinks about it, certainly doesn't have anything to do with driving. So looking at these facts, clearly the 911 caller, besides the credibility problems, it simply doesn't rise to the level in and of itself to justify a traffic stop. And yet, Officer Cook testified that the original investigation was strictly due to what he characterized as reckless driving and urinating on the roadway. Now, if every time someone gets on a two-lane highway and passes a truck at 70 miles an hour while they're passing, even assuming that the observer had some means of gauging the speed, to call that reckless driving, well, I would suggest a lot of us are in trouble if that constitutes reckless driving. With respect to counsel's presentation, counsel packed in a lot of facts about what happened after the unlawful stop. But the court below held that it became the lawful stop when Officer Cook put on the searchlight or the spotlight. And while counsel said something to the effect it wasn't clear when this happened, quoting from counsel's brief, Cook testified that as soon as he turned the spotlight on, the defendant opened the door and stepped out of the truck. The spotlight went on first before the other observed behavior. And if we look at the totality of circumstances, you've got two police cars following Mr. Greenwood for blocks. They pull in immediately behind him, one, then the other. They approach their vehicles. They approach the defendant. How much they approach, we don't know. But then they turn the spotlight on him. Two compelling reasons why, when you look at this totality, it does rise to the level of a traffic stop at that point. One, although the case law is not entirely clear, I would suggest there's a big difference between cases in which two police officers approach and one of them has a flashlight to someone who's sitting in a car and two police cars coming immediately in line, parking behind the vehicle, and then putting a spotlight on him. A flashlight only signals that the officer needs to see what he's doing. A floodlight from a police car signals that driver, hey, you're under my scrutiny. You better not go anywhere. I have a spotlight on you to show that I need to keep an eye on you. It sends a much stronger message than the use of a flashlight. Let's assume there was a seizure, okay? But prior to that, the police officer, or he didn't receive the 911 call, but he was from dispatch. They told him there's a 911 call about this truck. It's heading your direction. They see the truck. They've got a license plate number. As I understand it, the license plate number matches except maybe two numbers are transposed. Right. They see him weave in his lane, son. They see him make a wide turn. Why wouldn't that be enough to stop under Terry? Because neither of those things in and of themselves, or even taken in combination, amounts to reasonable suspicion of a real violation. Again, weaving within lane only arises at that level of tyrannic driving. There was no evidence there. The state, by the way, which had two bites at the apple to try to overcome the prima facie burden that was established by the defendant, never called Officer Ehrman to testify, which the court also noted. It wasn't just the lack of the video evidence. I think we're entitled to presumption that Theresa and Officer Ehrman didn't testify. It's because what he had to say would not have helped the state or the court below. But in addition to that, it simply doesn't rise to that level. It was ambiguous. You know, the idea of weaving within lane, sure. If you look at cases like Greco, which were cited by the state, in that case there was swerving two or three times from the center to the curb. In the other cases cited by the state on this point, there is really strong indicia of someone having difficulty operating their motor vehicle. This simply didn't rise to that level, and we owe deference to the court on its factual findings. So basically my point in that is that the cases cited by the state stand for the proposition that weaving within lane may be a justification for a traffic stop, but not every instance of weaving within lane does rise to that level. And I think a fair reading of the case law establishes that and therefore supports the conclusion of the court below. Counsel says that, well, there was no show of authority, as in cases like Cosby, or as Cosby held, there wasn't sufficient show of authority. Again, the Cosby-Mendoza case was someone seated in a vehicle, two police officers come up with a flashlight. These are completely different circumstances. One final point I want to make about that is that the officer stated on the record that it was his intention to get Mr. Greenwood. Those were his words. He also referred to it several times as a traffic stop. And in their reply brief, the state suggests, well, what his subjective intentions are don't matter. But I would suggest to the court that they do matter insofar as the court below could properly assume that Officer Cook's conduct was consistent with his stated intention. If his stated intention was to get Mr. Greenwood, and he even viewed it several times as a traffic stop, that makes it much more likely that when he got out of the vehicle and shown the spotlight on Mr. Greenwood, that he was acting in an aggressive or at least authoritarian manner to basically make sure this guy wasn't going to go anywhere. So that's the point of that. It's not that the intentions matter. It's what those intentions reflect and what it makes more probable to really occur. Thank you, Your Honor. Thank you, counsel. Counsel? First, about that last point, the people in the Brook Library discussed the get defendant discussion that the defendant here has made. Of course, subjective intent isn't dispositive. And his use of the phrase traffic stop, well, of course, this quickly became a traffic stop. There wasn't one already, so it's not surprising that he used that phrase. And, of course, there's no evidence of police aggression here. And the circuit court specifically declined to make any factual finding about anything that occurred after Officer Cook turned on that spotlight, explicitly ruled that events subsequent to turning on that light were irrelevant. The defendant says that Cook and Ehrman approached him. It was discussed in the Brook Library that there's no basis for that in the record. The circuit court, again, didn't make that finding. And notably, again, under Ludeman and Cosby, says that an officer may approach a citizen and ask questions. So even if the officer or officers did approach, that's not dispositive. And those cases can't be distinguished on the point that the drivers in those cases were in the vehicle, whereas the defendant here got out of this vehicle. Number one, the drivers in those cases were confined. And so the driver in this case had gotten out of this truck. So how can he have felt more like he couldn't leave than the drivers in those cases? The defendant tries to distinguish between flashlights versus spotlights. But Ludeman specifically says that there's no difference. Ludeman did not distinguish between the use of a flashlight and spotlight, and again, discussed the policy reasons why officers should not be required to conduct encounters in the dark. The defendant says that perhaps there was some unclarity about when the spotlight went on. People were clear that the spotlight was turned on, and then immediately after that, the defendant got out of his truck. The point that I made in response to your question, Your Honor, was that it wasn't clear when Officer Ehrman pulled in. Well, Officer Cook testified to me that he turned on the spotlight instead of his flashing lights because he was in the VFW parking lot and he didn't want to attract that much attention, which doesn't that suggest that his intent was to do the same thing? He just did it with the spotlight as opposed to the flashing lights, you know, to let the guy know you're stopped. Well, Your Honor, if it does suggest that intent, then the officer's subjective intent, again, is irrelevant to the issue of whether there was a seizure. And Ludeman stated that turning on the spotlight without coercive behavior is not going to result in a finding of seizure, that more is required. The defendant says that there's a difference between weaving and swerving. I'd suggest that that's semantic and that these cases say that weaving within a lane is enough. Also, weaving within a lane, it doesn't have to be unsafe. And I think that the Court can see an analogy to that in the Hackett case and Smith, that actually crossing the lane line doesn't have to be unsafe in order for there to be an IBC violation. Well, I'd say that the same holds true here, that weaving within a lane doesn't have to be unsafe to give rise to reasonable suspicion to affect an investigatory stop. The defendant argues that there could be an innocent explanation for this wide left turn, but, again, the possible innocent explanations do not necessarily negate probable cause. What matters is what the officer saw. This concept is discussed in Hackett. Also, there are two different statutes cited in the people's brief that could be implicated by the wide left turn. One is just improper lane use, leaving the lane, which he did. And then the second is improper left turn, which says that when you make a left turn, you have to enter a lane that's available to traffic, as the parking lane was not. I mean, not through traffic anyway. And then with regard to the 911 call, and this is all discussed in the briefs. We've read the briefs. We appreciate the briefs and arguments of counsel. And I take the case under advisement of the courts in the short recess.